GEORGE E. ARMSTRONG, APPELLANT, *v.* HUGH J. GRANT, MAYOR, ETC., AND OTHERS, RESPONDENTS.

*Taxpayer's suit — when it can be maintained to prevent the signing of a contract by municipal authorities.*

In an action brought by a taxpayer in the city of New York, to prevent the execution of a proposed contract between the Standard Electric Sub-way Company and the Board of Electrical Control of that city, it appeared that the Board of Electrical Control, in the year 1886, had entered into a contract with the Consolidated Telegraph and Electric Sub-way Company for the construction and maintenance of certain sub-ways in that city, which, as subsequently modified. was made valid, except as to a few of its features, by the act (chap. 716 of 1887). The Consolidated Telegraph and Electric Sub-way Company had not refused to proceed with the work, but, in consequence of an arrangement entered into by it with the Standard Electric Sub-way Company, the former proposed to surrender and assign its rights and interest in certain portions of the contracts above mentioned, and in the work which it had already performed, to the latter company.

Previous to this time a resolution had been adopted by the Board of Electrical Control, containing a statement of the streets and avenues in which it was intended that these sub-ways should be constructed, in which it was stated that they should be built within the current year of 1890. This resolution was not made a part of the contract which it was proposed should be entered into between the Standard Company and the Board of Electrical Control; nor was the Standard Company, by said contract, obligated to comply therewith, nor

was there any specification in the proposed contract concerning the time within which the sub-ways were to be laid, nor any definite specification of the streets within which they were to be laid.

This proposed contract also provided, that should any dispute arise between the Standard Company and any company occupying the sub-way it should be referred to the members of the Board of Electrical Control, whose decision should be final, although, by section 7 of chapter 716 of 1887, the power to hear and settle disputes as to the use of sub-ways had been conferred upon certain courts or the judges thereof therein mentioned.   Section 8 of said act authorized a purchase of such sub-ways on behalf of the city, but no provision therefor was made in the contract.

*Held,* that the omission to bind the Standard Company to construct the sub-ways, and to do it within the time mentioned in the resolution, and the direct hostility of certain provisions of the contract to the act of the legislature, justified a tax-payer in bringing an action to prevent the execution of this contract, certainly until it should be made entirely definite and clear that the rights of the public would be subserved and effectually secured thereby.

*Quære,* whether or not such a condition of affairs existed as authorized the Board of Electrical Control to enter into a new contract for the construction and maintenance of sub-ways.

That, in this action, the court was not called upon to determine whether the Standard Company incurred any loss by this disposition of the case, as its decision under the act (chap. 673 of 1887) was to be determined entirely by the public interests.

APPEAL by the plaintiff from an order entered, in the office of the clerk of the county of New York on March 22, 1890, and particularly from so much thereof as denied plaintiff's motion to continue the injunction in this case, and as vacated and set aside the injunction order made therein by Mr. Justice PATTERSON.

The order appealed from was made at a Special Term of the Supreme Court, held at chambers in the city of New York on March 21, 1890, denying a motion to continue an injunction, whereby the defendants, Hugh J. Grant and others, constituting the Board of Electrical Control of the city of New York, were enjoined and restrained until the further order of the court from making the contract with the Standard Electrical Sub-way Company, in the complaint mentioned, or any contract for the construction, maintenance and operation of sub-ways for electrical conductors in the streets, avenues and highways of the city of New York, and, further, from relieving the Consolidated Telegraph and Electrical Sub-way Company from any of its obligations.

It was further provided in the order that the operation of the

order, and all proceedings thereunder, be stayed until the hearing and determination by the General Term of an appeal by the plaintiff, referred to therein, provided that a bond should be given, etc.

*Elihu Root* and *De Lancey Nicoll,* for the appellant.

*W. H. Peckham, W. N. Cohen* and *D. J. Dean,* for the respondents.

PER CURIAM :

This action has been brought by the plaintiff, who is a taxpayer of the city of New York, upon property assessed for an amount exceeding the sum of $1,000. The object of it is to prohibit and enjoin the making and execution of a contract proposed to be made between the Standard Electric Sub-way Company and the Board of Electrical Control in and for the city of New York, created and authorized to act under chapter 716 of the Laws of 1887. The plaintiff placed his right to maintain the action upon the authority created by chapter 673 of the Laws of 1887. This act authorizes any person, or number of persons, whose assessments for the payment of taxes upon their property shall exceed $1,000, upon giving the security therein mentioned, to prosecute and maintain an action against all officers, agents, commissioners, and other persons acting for or on behalf of any county, town, village or municipal corporation in this State, and each and every of them, to prevent any illegal official act on their part, or to prevent any waste or injury to, or to restore and make good, any of the property, funds or estate of such county, town, village or municipal corporation.

The act, as it has been in this manner adopted, is very broad and comprehensive in its provisions. Its object seems to have been to vest the taxpayer with the authority of restraining not only municipal corporations in the State, but their officers, from violating the obligations and duties of their trusts by any illegal official act, or any act which would cause waste or injury to the funds, property or estate of the municipality; and if the contract, which is proposed to be made between the Board of Electrical Control and the Standard Electric Sub-way Company, would be either illegal, or produce waste or injury to the property of the municipality, then the plaintiff, as a taxpayer, is invested with the right to maintain and prosecute the action.

The objection has been taken that other parties should have been brought into the action to enable the plaintiff to maintain it under the authority of this statute. But if this objection should be held to be well founded, it would be no answer to the right to maintain the action, for, by section 452 of the Code of Civil Procedure, ample provision has been made to supply any defect which may be found in the action in this respect. It has been there declared, that where a complete determination of the controversy cannot be had without the presence of other parties, the court must direct them to be brought in. But as no vested rights have been acquired there would seem to be no ground for this objection.

The case, accordingly, is not one on this account for the dismissal of the complaint or the denial of such relief as will prevent the consummation of the illegal acts which the statute has intended to avoid. The members of the Board of Electrical Control have been made parties to the action, whose object is to prevent them from doing that which may be found to be intended to be done without lawful authority; and if a case has been presented from which it can be seen that such an illegal and wasteful act is contemplated or intended by the members of this board, they may be prevented from consummating it by an injunction; that board having no general authority to act, but deriving all their authority from the provisions of the statute.

The object of the legislation concerning the action of this board has been to provide the means for placing the electric and telegraphic wires used in the city in sub-ways to be constructed and maintained under the surface of the streets of the city. This legislation, so far as it is required to be considered in this action, is contained in chapter 499 of the Laws of 1885; chapter 503 of the Laws of 1886, and chapter 716 of the Laws of 1887. The latter act has defined and declared more particularly the manner in which this object shall be attained through the action and authority of the members of the Board of Electrical Control.

In the year 1886 they entered into a contract with the Consolidated Telegraph and Electric Sub-way Company for the construction and maintenance of the sub-ways mentioned and referred to in it. A further agreement was also entered into, modifying and changing this contract in respects not necessary to be considered in

the disposition of this appeal, which contracts were validated, except as to a few of their features, by the act of 1887. This company proceeded in the construction of the sub-ways mentioned in this contract; but they have not been completed, and the company has announced that, in their opinion, the sub-ways cannot be completed in less than two years. It has not refused to proceed with the work, but, in consequence of an arrangement or understanding entered into with the Standard Electric Sub-way Company, it proposes to surrender and assign all its rights and interests in certain portions of these contracts, and the work it has already performed, to the latter company; and to carry this arrangement or understanding into effect a contract has been proposed by the Standard Electric Sub-way Company and sanctioned by the counsel for the city of New York; and whether this contract, in this manner accepted, is one which the acts, already mentioned, will allow to be executed and carried into effect, is the more important part of the controversy now before the court.

Previous to the time when the form of the contract was determined upon, and on or about the 19th of February, 1890, a resolution was adopted by the Board of Electrical Control containing a statement of the streets and avenues in which it was intended that these sub-ways should be constructed, and by this resolution it was stated that they should be built within the current year of 1890. This was the obvious as well as the expressed purpose of the board as to the time. It was designed that the work should be done with the greatest possible expedition, and the streets mentioned in the resolution, thereby provided with an adequate system of lights by corporations or individuals who might be authorized to use the sub-ways. But this resolution has been made no part of the contract which it is proposed shall be entered into. It has, it is true, been generally referred to therein, but nowhere has it been made a part of this contract; neither has the party with whom it is proposed to make the contract been in any manner obligated, by its terms or its necessary implications, either to construct the sub-ways within the current year or in the streets and avenues mentioned in the resolution. This part of the contract, as it is recited is, that it is deemed reasonable, advisable and proper for the purpose of carrying into effect the provisions and intent of the act of 1887 that the contract should be

made; and that act certainly contemplates the construction of the sub-ways with all possible dispatch, and the removal of the poles and wires from the streets, and the placing and operating of these wires in the sub-ways.

The immediate object of the board was that the sub-ways should be made to include the streets and avenues mentioned in the resolution and be completed within the current year. But that object the contract, as it has been drawn and is proposed to be executed, in no manner secures to be accomplished. Certain recitals are contained in the preceding part of the proposed contract. But none are so expressed as to include the construction and maintenance of sub-ways in the streets or avenues or within the time mentioned in the resolution. Its recitals refer to the fact that a contract had been entered into with the Consolidated Sub-way Company for the building of sub-ways, and that certain sub-ways had been built by that company; and that the company had conveyed to the Standard Sub-way Company, all the sub-ways, conduits and ducts it had built except those appropriated to the use of the Edison Electric Illuminating Company; and that the Consolidated Company had applied to the board for such a modification of its own contract, as would relieve it from the obligation to manage and maintain and operate the sub-ways, and from the further obligation to build sub-ways for electric-light and power conductors; and that the members of the board had modified the contract of the Consolidated Company by an instrument of even date; and that the Standard Sub-way Company were desirous to enter into a contract for building, etc., of such further sub-ways. What these further sub-ways which the latter company was to enter into a contract to build, is not mentioned in the recitals or anywhere in the proposed contract. But, by the references afterwards made, these further sub-ways have been generally referred to without the addition of any language so far extending them as to include the sub-ways mentioned in the resolution. The contract then proceeds with the covenant that the party of the second part (the Standard Company) agrees to provide, build, equip, maintain and operate, as herein provided, the sub-ways in this contract mentioned and referred to. What these sub-ways were intended to be was here no further expressed than that they were those mentioned and referred to in the contract, and

the contract had mentioned and referred to no more than further sub-ways; and the language of the contract, in its subsequent pro-visions, has been confined and applied in the same manner. By article 2 of the proposed contract it has been declared that the sub-ways aforesaid, as the Standard Company shall be directed by the party of the first part to build, shall be built in accordance with the plans and specifications theretofore furnished, or to be furnished, by the board. But no language has been employed in this part of the contract, or, indeed, in any other, by which this company agreed that it would build such sub-ways as the board should direct it to build. Power to make modifications and changes which might be reasonably necessary has been reserved to the board, but that power extends only to the said sub-ways or their mode of construction. The next division of the contract uses the language in the same way of "said sub-ways," and so does the paragraph immediately fol-lowing, with the additional right to the board, in case such sub-ways shall not be sufficient for the companies or corporations applying to use them, that then additional sub-ways sufficient therefor should be constructed and laid. But this does not enlarge the extent of the streets or avenues in which the additional sub-ways should be placed. It merely provides for making the additions where those already con-structed shall prove to be insufficient for the corporations applying to use them. The board then reserve to themselves the right to permit any other company or corporation to build the sub-ways not previously ordered to be built by the Standard Sub-way Company. It further proceeds, in its reference to the sub-ways, to use the same language of "said sub-ways," in no manner enlarging the work to be constructed so as to include any or either of the avenues and streets mentioned in the resolution. In this respect the proposed contract is radically defective, and not within the limits imposed upon the board by its own resolution, adopted, defining and declaring the territory over which the sub-ways should be built and maintained.

A similar defect is found in the contract as to the entire want of any specification concerning the time within which the sub-ways are to be laid. By the resolution which was adopted, the contract to be entered into should limit this to the period of the current year. But there is absolutely no provision in the contract subjecting it to this limitation.

By section 7 of the act of 1887, the power to hear and settle disputes as to the use of the sub-ways has been conferred upon the justices of the Supreme Court, any judge of the Court of Common Pleas or of the Superior Court of the city of New York, or upon the courts themselves. When any difference may arise as to the terms upon which that use should be granted, this act requires the difference to be settled under its provisions, while by subdivision 10 of the proposed contract it has been provided that, in case any dispute shall arise between the party of the second part (which is the Standard Company) and any company occupying or desiring or requiring to occupy said sub-ways, the same should be referred to the members of the board or their successors for settlement, whose decision should be final. This part of the contract was inserted without authority, for the only power which the board has over the subject is that defined and delegated by these different acts.

The eighth section of the act has conferred upon the commissioners of the sinking fund the power to purchase the sub-ways by making the payments mentioned in the section. This provision has been in no way complied with in the contract now under consideration.

By section 15 of the contract the city, at any time after January 1, 1897, would have the right to buy the sub-ways which had been theretofore constructed under the contract, subject, however, to all leases, mortgages or contracts theretofore lawfully made within the limits imposed by section 12 of the contract. Section 12 imposes no limitation as to the amount of mortgages or incumbrances which might be placed by the company upon the sub-ways constructed by it. The limitations therein contained, apply only to the case when the city should take possession of the sub-ways by reason of the failure of the contracting company to comply with the terms of the contract. The result would be that the Standard Company might mortgage to any amount that they pleased, as long as they did not fail to comply with the terms of their contract, so as to make themselves liable to the forfeiture contained in the twelfth paragraph of the contract. The city, if it desired to become the purchaser, would, by the terms of the contract, be required to assume this mortgage, no matter how large it might be, which is in

direct conflict with section 8 of the act, which declares that such mortgages at the time of the purchase shall not exceed fifty per cent of the cost, and the company by the terms of the contract would be enabled, by the placing of excessive mortgages upon the property, to prevent the city from becoming a purchaser.

It has also been declared in the proposed contract that the rights of the Standard Company shall be subject to any liability subsequently enacted by the legislature, and no qualification of that description was included in the resolution, or any action taken by the board.

It is true that some of these defects are not so fundamental as to justify, if they stood alone, the prohibition of the court that this contract should not be entered into. But there are others of so radical a nature as to involve an entire want of authority in the action authorized to be taken by the board.

These attributes consist mainly of the omission to bind the Standard Company to the construction of the sub-ways mentioned in the resolution, and to do that within the period of one year, which, in the judgment of the board, would be sufficient for that purpose, and sections 10 and 15 of the contract, which are in direct hostility to the provisions of sections 7 and 8 of the act of 1887. Experience has demonstrated the necessity of requiring corporations in their contracts with municipal bodies or their officers to clearly and explicitly define their obligations, and leave as little as possible to future uncertainties; for, after the agreements or privileges may be obtained, the exacting disposition of the parties contracting with these bodies is such as to exclude all possible concessions or understanding which may be essential to promote and protect the interests of the public.

These contracts cannot be made in language too plain or concise to prevent the possibility of future disputes and controversies. And while the granting of an injunction against the execution of a contract, such as the one proposed, will be attended with some delay in securing the accomplishment of the object intended to be produced by the action of the board, it will, in the end, be much more advantageous to the public that its interests shall be clearly and expressly limited here, than to permit the contract now proposed to be entered into to be executed, which could not fail to engender dis-

putes, and would leave it to the volition of the Standard Company to construct sub-ways or not as it might afterwards determine to be most expedient for its own interests.

The plaintiff is in a position, as a taxpayer, to prevent this illegal contract from being subscribed and completed; certainly until it shall be made entirely definite and clear that the rights of the public will be subserved and effectually secured.

We express no opinion as to whether or not, as the facts appear in this case, such a condition of affairs exists as authorizes the Board of Electrical Control to enter into new contracts for the construction and maintenance of sub-ways, because, in case it should hereafter be finally determined that such authority did not exist, the Standard Company would be the only party which would be injured, having expended its money in structures under the streets of New York, to which they had acquired no title.

As to any loss which the Standard Company may incur, the court cannot be concerned in the disposition of the case. It is with those rights that inhere in the public, and which, by the act first referred to, are designed to be protected, that the court is now called upon to deal.

Neither of these objections, except that as to the time for the completion of the work, seems to have been brought to the attention of the court at Special Term, and they were singularly omitted in the points of the counsel on the argument of the appeal.

The order will be reversed, with ten dollars costs and disbursements, and an injunction issued in the form to be fixed at the time of the settlement of the order.

Present — Van Brunt, P. J., Brady and Daniels, JJ.

So ordered.